UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OZIE C. CARGILE, II,

    Plaintiff,                              CIVIL ACTION NO. 10-10072

    v.                                   DISTRICT JUDGE ARTHUR J. TARNOW

STATE OF MICHIGAN, CITY         MAGISTRATE JUDGE VIRGINIA MORGAN
OF OAK PARK, CHARTER
TOWNSHIP OF CLINTON, CITY
OF ROYAL OAK, CITY OF BERKLEY,
CITY OF FERNDALE, and CITY OF
GROSSE POINTE,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTIONS TO DISMISS (D/E #12, #15, #17, #18, #23)**

**I. Introduction**

      This matter comes before the court on defendants City of Oak Park, City of Berkley and City of Grosse Pointe's Motion to Dismiss (D/E #12), defendant State of Michigan's Motion to Dismiss or, in the alternative, for More Definite Statement (D/E #15); defendant City of Royal Oak's Motion to Dismiss (D/E #17), defendant Charter Township of Clinton's Motion to Dismiss (D/E #18), and defendant City of Ferndale's Motion to Dismiss (D/E #23). Plaintiff filed responses in opposition to those motions (D/E #19, 32) and the State of Michigan and City of Royal Oak filed replies to those responses (D/E #21, #24). For the reasons discussed below,

this court recommends that defendants' motions be **GRANTED** and that plaintiff's complaint be dismissed.

## II. Background

### A. Complaint

On January 8, 2010, plaintiff filed a complaint against the defendants in this matter (D/E #1). In that complaint, plaintiff alleges that defendants have violated his constitutional rights to travel and to due process through their wrongful enforcement of Michigan's Vehicle Code. Specifically, plaintiff argues that defendants are violating those rights by requiring him to have a driver's license to drive on public highways and that defendants have conducted improper traffic stops on seven different occasions. Plaintiff also alleges that, by extorting fees from plaintiff through their wrongful enforcement of the Vehicle Code, defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

### B. Motions Before Court

On March 11, 2010, defendants City of Oak Park, City of Berkley and City of Grosse Pointe filed a motion to dismiss (D/E #12). In that motion, those defendants argue that plaintiff's complaint must be dismissed because plaintiff fails to state a claim upon which relief for either a § 1983 claim or a RICO claim. Specifically, defendants argue that plaintiff failed to identify an unconstitutional policy or custom as the basis for his § 1983, that there is no fundamental right to drive, and that plaintiff has failed to make specific factual allegations in support of his RICO claim. In the alternative, defendants assert that plaintiff needs to file a more definite statement.

On March 15, 2010, the State of Michigan filed a motion to dismiss or, in the alternative, for more definite statement (D/E #15). In that motion, the State of Michigan argues that plaintiff's complaint fails to make any specific allegations against the State of Michigan and, in any event, the State of Michigan is not subject to federal jurisdiction in lawsuits brought by its own citizens.

On March 25, 2010, the City of Royal Oak filed a motion to dismiss (D/E #17). In that motion, the City of Royal Oak argues that plaintiff has failed to state a § 1983 claim against it because the constitutional right to travel does not include the right to drive without a license, Michigan's Vehicle Code is constitutional, and plaintiff lacks standing to challenge to Vehicle Code. The City of Royal Oak also argues that plaintiff's RICO claim is improper because a municipality cannot be liable under RICO.

On April 5, 2010, plaintiff filed a response to the three motions to dismiss described above (D/E #19).[1] In that response, plaintiff argues that, while Michigan's Vehicle Code is not inherently unconstitutional, defendants' enforcement of it is a clear violation of plaintiff's constitutional rights because he has a right to travel and he was not driving a commercial vehicle. Plaintiff also argues, with respect to his RICO claim, that defendants acted together as a single enterprise and that the enterprise engaged in racketeering activity. Plaintiff further argues

---

[1] Plaintiff also identified a portion of his response as a more definite statement of his claims.

that the State of Michigan does not have immunity from this suit because plaintiff primarily seeks declaratory and injunctive relief.[2]

On April 6, 2010, the Charter Township of Clinton filed a motion to dismiss (D/E #18). In that motion, the Charter Township of Clinton argues that plaintiff's complaint should be dismissed because plaintiff failed to plead a constitutional violation, that defendant's policy or custom led to the violation of plaintiff's constitutional rights, or the elements of a RICO claim.

On April 15, 2010, the City of Ferndale filed a motion to dismiss (D/E #23). In that motion, the City of Ferndale argues that the constitutional right to travel is not violated when plaintiff is subjected to the Michigan Vehicle Code. The City of Ferndale also argues that plaintiff has failed to allege the elements for municipal liability or a RICO claim.

On May 6, 2010, plaintiff filed a response to defendants Charter Township of Clinton and City of Ferndale's motions to dismiss (D/E #32). In that response, plaintiff incorporated and reiterated the arguments he made in his earlier response.

**III. Standard of Review**

Defendants all move to dismiss plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. RMI Titanium Co. v. Westinghouse Elec.

---

[2]On April 13, 2010, the State of Michigan filed a reply to plaintiff's response (D/E #21). In that reply, the State of Michigan argues that the Michigan Vehicle Code does not limit the definition of motor vehicle to commercial vehicles and that the Vehicle Code does not violate the right to travel. The State of Michigan also argues that plaintiff failed to state a valid RICO claim and that the court lacks jurisdiction over's plaintiff's claims against them. On April 19, 2010, the City of Royal Oak filed a reply to plaintiff's response in which it reiterated its earlier arguments (D/E #24).

Corp., 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..." Bell Atlantic Corp. v. Twombly, 550 U.S. 555, 570, 127 S.Ct. 1955, 1964-65, 1974, 167 L.Ed.2d 929 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court recently provided, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 U.S. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. Iqbal, 129 U.S. at 1949. See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). This presumption, however, is not applicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. Therefore,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 555).

**IV. Discussion**

    **A. State Defendant**

Plaintiff's claims against the State of Michigan are barred by Michigan's immunity under the Eleventh Amendment to the United States Constitution and, consequently, they should be dismissed. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

U.S. Const. Amend. XI. Therefore, the Eleventh Amendment generally bars suit against a state. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 97-98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), overruled in part on other grounds, Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45; Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

A state may waive its sovereign immunity and consent to suit against it in federal court.. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Waiver of sovereign immunity is only found where expressly stated or "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman, 415 U.S. at 673, 94 S.Ct. 1347 (citation omitted). A state's consent to suit in its own court does not constitute a waiver of Eleventh Amendment immunity. Florida Dep't. of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n., 450 U.S. 147, 149-50, 101 S.Ct. 1032,

67 L.Ed.2d 132 (1981). In addition, a general waiver of immunity is not sufficient to constitute waiver of Eleventh Amendment immunity. Atascadero, 473 U.S. at 241. A state must specify its intention to be subject to suit brought in federal court, not just to suit brought in state court. Atascadero, 473 U.S. at 241. Here, however, the State of Michigan has not consented to civil rights suits in the federal courts, see, *e.g.*, Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986), and there is no indiction that Michigan intended to subject itself to suit on a RICO claim in federal court.

Congress may abrogate sovereign immunity where Congress's authority to act arises under § 5 of the Fourteenth Amendment, but it must make its intent to abrogate immunity explicit and clear. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In this case, however, RICO does not arise under § 5 of the Fourteenth Amendment, and although § 1983 was adopted pursuant to § 5 of the Fourteenth Amendment, Congress did not indicate its intent to abrogate state sovereign immunity and therefore the United States Supreme Court has read the statute as preserving immunity. Quern, 440 U.S. 332 at 345. As a result, neither cause of action in this case is based on law wherein Congress abrogated state sovereign immunity.

In his response, plaintiff cites to Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that suits against state officials for prospective injunctive relief are

permissible because they are, in effect, suits against the officials in their individual capacities. However, plaintiff only sued the State of Michigan in this case and, consequently, Ex parte Young is inapplicable.

**B. Municipal Defendants**

**1. 42 U.S.C. § 1983 Claims**

As a preliminary matter, this court would note that plaintiff does not specifically identify his constitutional claims as being brought pursuant to 42 U.S.C. § 1983. However, as there is no direct cause of action under the United States Constitution, plaintiff's complaint is construed as having been brought pursuant to §1983. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856 (2d Cir. 1981) (where a federal statute governing civil action for deprivation of rights provides a remedy, *i.e.*, 42 U.S.C. § 1983, an implied cause of action grounded on Constitution is not available), overruled by statute on other grounds as recognized in Brandman v. North Shore Guidance Center, 636 F.Supp. 877, 879 (E.D. N.Y. 1986) (Wexler, J.).

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

"To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998). In this case, with respect to plaintiff's constitutional claims against the municipal defendants, only the second element is in dispute. For the reasons discussed below, this court finds that plaintiff has failed to state a claim as to that element and plaintiff's § 1983 claims should be dismissed.

While plaintiff's exact constitutional claims are unclear, they all appear to rely on plaintiff's assertion that the Michigan Vehicle Code is unconstitutional to the extent it requires him to have a driver's license to drive. However, the United States Supreme Court has held, as a general matter, that "the power of the State to regulate the use of its highways is broad and pervasive." Bibb v. Navajo Freight Lines Inc., 359 U.S. 520, 523, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). See also Reitz v. Mealey, 314 U.S. 33, 35, 62 S.Ct. 24, 86 L.Ed. 21, overruled in part on

other grounds by Perez v. Campbell, 402 U.S. 637, 652-654, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (holding that the "use of the public highways by motor vehicles, with the consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers."). Within its powers of regulation, "a state may freely exact registration of the vehicle and an operator's license." Bradley v. Public Utilities Commission of Ohio, 289 U.S. 92, 95, 53 S.Ct. 577, 578 (1933) (citing Hendrick v. Maryland, 235 U.S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385 (1915); Clark v. Poor, 274 U.S. 554, 557, 47 S.Ct. 702, 71 L.Ed. 1199 (1927); Sprout v. South Bend, 277 U.S. 163, 169, 48 S.Ct. 502, 72 L.Ed. 833 (1928)).[3]

Additionally, plaintiff's specific invocation of his "right to travel" fails to state a claim upon which relief can be granted. The United States Supreme Court has recognized a protected right to interstate travel, Saenz v. Roe, 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999)[4], and the Sixth Circuit has recognized a protected right to intrastate travel, *i.e.*, "a right to

---

[3]This court would note that the above cases make no distinction between the ability of the states to regulate commercial and non-commercial vehicles, and that plaintiff's arguments relying on the non-commercial nature of his vehicle are without merit. This court would also note that, in making his arguments, plaintiff cites 18 U.S.C.§31(a)(6) for the definition of motor vehicle rather than the Michigan Vehicle Code. The Michigan Vehicle Code defines a "motor vehicle" at M.C.L. § 257.33 and that definition is not limited to commercial vehicles, as argued by plaintiff.

[4]In Saenz, the Supreme Court identified three components of the right to travel: "It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the

travel locally through public spaces and roadways," League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 534 (6th Cir. 2007) (quoting from Johnson v. City of Cincinnati, 310 F.3d 484, 494-98 (6th Cir. 2002). A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right. Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). However, the protected right to travel does not embody a right to a driver license or a right to a particular mode of transportation. See Duncan v. Cone, No. 00-5705, 2000 WL 1828089, *2 (6th Cir. Dec. 7, 2000) (holding that "there is no fundamental right to drive a motor vehicle" and that a burden on a single mode of transportation simply does not implicate the right to interstate travel); Miller v. Reed, 176 F.3d 1202, 1205-06 (9th Cir. 1999) (holding that there is no fundamental constitutional right to drive a motor vehicle and the DMV did not unconstitutionally impede plaintiff's right to interstate travel by denying him a driver's license); Roberts v. State, 229 F.3d 1164, 2000 WL 1275606, *2 (10th Cir. 2000) (table) (stating that the plaintiff's contention that the State of Colorado may not require him to have a driver's license is devoid of merit).

**2. RICO Claims**

---

second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens in that State." Saenz, 526 U.S. at 500. Here, however, plaintiff has not identified any authority for the proposition that requiring a driver's license violates any of those rights.

Plaintiff's second count alleges that defendants violated RICO through the acts described in the complaint. To state a civil claim under RICO, a plaintiff must allege: (1) that a person (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A "pattern" under RICO "requires at least two acts of racketeering activity" within a ten year period, 18 U.S.C. § 1961(5), or multiple predicates within a single scheme that amounted to criminal activity. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 236, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). A civil RICO claimant must prove conduct that is indictable, and offenses that are punishable under various criminal statutes. Sedima, 473 U.S. at 488.

Here, plaintiff has failed to state a RICO claim upon which relief can be granted against the municipal defendants because those defendants cannot form the specific intent necessary to establish a RICO claim. While the Sixth Circuit has not directly ruled on this issue, an unpublished Sixth Circuit case and district courts within the Sixth Circuit have all held that a RICO claim cannot be established against a municipality because a municipality cannot form the specific intent necessary to establish a RICO claim. See Call v. Watts, No. 97-5406, 1998 WL 165131, at *2 (6th Cir. Apr.2, 1998) (*per curiam*) (stating that counties cannot form the requisite *mens rea*); McGee v. City of Warrensville Hts., 16 F.Supp.2d 837, 848 (N.D. Ohio 1998)

(stating that "a municipality is incapable of forming the specific intent associated with the underlying predicate acts of fraud"); County of Oakland by Kuhn v. City of Detroit, 784 F.Supp. 1275, 1283 (E.D. Mich. 1992) (Gadola, J.) ("Upon the weight of authority, this court holds that a municipal corporation cannot form the requisite criminal intent and cannot be held liable under the civil RICO laws."); Hicks Properties, LLC v. Cincinnati Metropolitan Housing Authority, No. 1:09-CV-21, 2009 WL 2591679, *2 (S.D. Ohio Aug. 20, 2009) (Dlott, C.J.) (holding that a "RICO claim cannot be established against a municipality because a municipality cannot form the specific intent necessary to establish a RICO claim"); Anderson v. Collins, No. 2:96-CV-269, 1998 WL 1031496, *3 (E.D. Ky. July 14, 1998) (Coffman, J.) ("Even though they may be "persons," Boone County and the Boone County Planning Commission cannot be subject to liability under RICO because, as governmental entities, they cannot form the specific intent necessary to commit the predicate offenses.").

Similarly, circuit courts and district courts across the country have come to the same conclusion. See, *e.g.*, Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991) (holding that civil RICO claims against a local government hospital district were properly dismissed because "government entities are incapable of forming a malicious intent."); Pine Ridge Recycling, Inc. v. Butts County, Ga., 855 F.Supp. 1264, 1273 (M.D. Ga. 1994) (Owens, C.J.) (collecting cases and finding that a municipal corporation cannot form the requisite criminal intent); In re Citisource, Inc. Sec. Lit., 694 F.Supp. 1069 (S.D. N.Y.

1988) (while a municipal corporation can be a "person" under the RICO statute, it is incapable of the criminal intent necessary to support the predicate offenses); Massey v. City of Oklahoma City, 643 F.Supp. 81 (W.D. Okla. 1986) ("the City itself is incapable of forming the mens rea of criminal intent necessary to perform an act of racketeering "). See also Genty v. Resolution Trust Corp., 937 F.2d 899, 914 (3rd Cir. 1991) (holding that a municipal corporation is not subject to a RICO claim and its treble damages provision because of the long-standing policy against assessing punitive damages against municipalities); Massey, 643 F.Supp. at 85-86 (noting that the punitive damages of RICO, when levied against a municipal corporation, punish innocent taxpayers).

Given that great weight of authority, this court also finds that the municipal defendants cannot form the requisite criminal intent to be held liable under the civil RICO laws and that, consequently, plaintiff's RICO claims should be dismissed.

Additionally, to the extent the municipal defendants could be liable under RICO, plaintiff's claims should be dismissed because plaintiff failed to adequately plead the elements of a RICO claim. As discussed above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face" and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 U.S. at 1949 (citing Twombly, 550 U.S. at 556). Here, both plaintiff's complaint and

the purported more definite statement found in his response merely make conclusory allegations regarding his RICO claim and they are devoid of factual allegations rendering those claims plausible.

**IV. Conclusion**

For the reasons discussed above, this court recommends that defendants' motions be **GRANTED** and that plaintiff's complaint be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      S/Virginia M. Morgan
                                      Virginia M. Morgan
                                      United States Magistrate Judge

Dated: June 18, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Ozie Cargile II via the Court's ECF System and/or U. S. Mail on June 18, 2010.

                                      s/Jane Johnson
                                      Case Manager to
                                      Magistrate Judge Virginia M. Morgan